## Federal Reserve Bank of Philadelphia v. Thomas

*Edward McKean Hawes* and *James S. Clifford, Jr.,* for plaintiff.

*Elmer C. Pfeiffer* and *Ashton L. Worrall,* for defendant.

DANNEHOWER, J., January 15, 1940.—The Federal Reserve Bank of Philadelphia, Pa., a holder in due course of a negotiable instrument, brought this action in assumpsit to recover a balance due on said negotiable instrument from an accommodation endorser, J. Stanley Thomas, defendant. The questions involved were, whether notice of dishonor was actually received by the endorser, and if not, whether the holder exercised due diligence, so that notice could be dispensed with. The jury rendered a verdict in favor of plaintiff bank for the bal-

ance due together with interest thereon. Defendant has filed motions for judgment n. o. v. and for a new trial, alleging, in addition to the conventional reasons, certain errors in the charge and in the admission of testimony and in affirming and refusing certain points for charge.

The note in suit was given by the Shubert Radio Co., Inc., by J. Howard Blackman, president, for $1540, dated Atlantic City, N. J., January 16, 1938, payable one month after date at the Atlantic City National Bank (Northside Branch) to the order of "ourselves" and endorsed by the maker and by J. Stanley Thomas, defendant.

It was admitted that the note was a negotiable instrument; that it was the fourth or fifth renewal of former notes; that defendant endorser had endorsed four or five notes in blank and left them with the maker in order that new notes could be given without trouble to him; that four or five prior notes had been protested and notice of dishonor was sent to the endorser at 2632 Atlantic Avenue, Atlantic City, N. J., the maker's business address, and always resulted in a renewal note; and that plaintiff bank on January 20, 1933, for value and before maturity, became a holder in due course. On February 16, 1933, the note, by its terms, becoming due and payable, was presented for payment to the examiner of the Atlantic City National Bank, which on January 30, 1933, had failed and closed its doors. Payment was refused, and on the same day the note was protested. The notary, Sudie A. Burris, of Atlantic City, N. J., in the official protest which was admitted in evidence, certified, inter alia; "I duly notified 'the maker and endorsers of the nonpayment thereof' and you will be looked to for payment of which you hereby have notice Shubert Radio Co., Inc., 2632 Atlantic Ave., Atlantic City, N. J., maker and endorser, and J. Howard Blackman, 2632 Atlantic Ave., Atlantic City, N. J.; J. Stanley Thomas, 2632 Atlantic Ave., Atlantic City, N. J., endorsers of said note, on the day aforesaid (February 16, 1933) at the hour of 6

o'clock p. m., by depositing the same at the post office addressed to each of them respectively, at the respective addresses above set forth, prepaying the postage thereon." It was not contradicted that 2632 Atlantic Ave., Atlantic City, N. J., was the business address of the maker, and was not the endorser's place of business or residence or where he was accustomed to receive his mail.

Defendant, accommodation endorser, testified that he has lived at Narberth, Montgomery County, Pa., for the past 15 years; that he was in the electrical supply business in Philadelphia, Pa., and sold merchandise to the Shubert Radio Co., Inc.; that in 1926 he opened a branch office in Atlantic City, N. J., as "Bell & Thomas" and sold out to the Electrical Supply Company in 1929 or 1930, of which company he became president, and was in business in Atlantic City, N. J., until the early part of 1933; that he never lived in Atlantic City, but only visited there occasionally to transact business; that the office of the Electrical Supply Company was about three and a half city blocks from 2632 Atlantic Avenue, Atlantic City, N. J., where the Shubert Radio Co., Inc., had its place of business; and that he received no notice of dishonor until February 8, 1939, six years after the protest. He admitted that he was an accommodation endorser and had endorsed four or five notes in blank for Mr. Blackman, to be used for renewals.

J. Howard Blackman testified that he never received any mail at his place of business addressed to J. Stanley Thomas.

Sudie A. Burris, the Atlantic City notary, testified that, since 1931, she sent out five or six notices of protest to J. Stanley Thomas, endorser, at 2632 Atlantic Avenue, Atlantic City, N. J., and, although the envelopes contained her return address, none was returned to her; that before she mailed notice of protest on February 16, 1933, she looked for the address of J. Stanley Thomas in the telephone directory and Atlantic City directory, and failed to find it; that she telephoned the note clerk at the

bank and was directed to send notice in care of Mr. Blackman; that she telephoned a girl clerk at Blackman's office and was directed by her to send notice of protest to the endorser to Mr. Blackman's office; and that said letter was not returned to her, although it contained her return address.

It was therefore contended by plaintiff that notice of dishonor to J. Stanley Thomas, endorser, was mailed to Mr. Blackman, maker of the note, who on former occasions, and on this occasion, delivered the notice to his friend, or if said notice was not actually received by the endorser the bank, through its notary, had exercised reasonable diligence and notice of dishonor was dispensed with because it could not be given or did not reach the party to be charged.

Defendant contended that the notice was never received by him and that it had not been mailed to his residence, or place of business in accordance with the law, and that therefore he was discharged from liability.

By section 89 of the Negotiable Instruments Law of May 16, 1901, P. L. 194, 56 PS §211, except as otherwise provided therein, "when a negotiable instrument has been dishonored by non-acceptance or non-payment, notice of dishonor must be given to the drawer and to each indorser, and any drawer or indorser to whom such notice is not given is discharged."

By section 108, 56 PS §230: "Where a party has added an address to his signature, notice of dishonor must be sent to that address; but if he has not given such address then the notice of dishonor must be sent as follows:

"1. Either to the post office nearest to his place of residence or to the post office where he is accustomed to receive his letters; or,

"2. If he lives in one place and have his place of business in another, notice may be sent to either place; or,

"3. If he is sojourning in another place, notice may be sent to the place where he is sojourning."

By section 112, 56 PS §235: "Notice of dishonor is dispensed with when, after the exercise of reasonable diligence, it cannot be given to or does not reach the parties to be charged."

Plaintiff cannot contend that notice of dishonor was mailed to defendant's residence or place of business in accordance with the act, but it does contend that notice was actually received by the endorser, because on four or five former occasions when similarly addressed notices were sent, each resulted in a new note; because the maker and endorser were friends, whose places of business in Atlantic City, N. J., were only three and a half blocks distant; because Blackman's lady clerk directed notice of protest to be mailed to that address; because no notices were ever returned to the notary, whose address was on the envelope. Notwithstanding Blackman's and defendant's denial that notice was received, nevertheless, these circumstances raised an inference that the endorser actually received the notice, though not sent in accordance with the requirements of the act.

But the more important issue was, whether the notary exercised reasonable diligence, so as to dispense with notice. What is reasonable diligence depends upon the circumstances of each particular case, so that no precise rule can be laid down further than to say that such effort must be made as a prudent man interested in giving notice of a fact would make to find the address of a party in order to accomplish that object. In other words, it must be such diligence as prudent men of business usually exercise when their interest depends on obtaining correct information. Search in a city directory, telephone directory, inquiries from the note clerk at the bank, and a clerk at the maker's place of business are, we believe, the exercise of reasonable diligence in order to locate the address of an endorser, who at that time had just about ceased doing business in Atlantic City and had returned to Philadelphia. In the light of these facts, we are of the opinion, as doubtless was the jury, that the notary had

exercised reasonable diligence. What more could she have done? She exhausted every possible source to learn where notice was to be sent.

We have carefully examined all of defendant's allegations of error as to the charge, points for charge and admission of testimony, and none of them contains any merit. A review of the record convinces us that the verdict of the jury was in accordance with the weight of the evidence and, no prejudicial error having been made, the verdict should not be disturbed.

And now, January 15, 1940, for the foregoing reasons, defendant's motions for judgment n. o. v. and for a new trial are overruled and refused, and exception is allowed defendant.